Take your time in getting set up. Let me go ahead and call the next cases. These are three consolidated cases for argument. United States v. Eason, case number 16-15413, United States v. Marlon Eason, case number 16-17796, and United States v. Lawson, case number 18-12848. Mr. Adler, whenever you're ready, and my understanding is you're going to be representing argument on behalf of all three appellants with Mr. Mendez and Mr. Rodriguez there for support. That's correct, Your Honor. Thank you. May it please the Court, Andrew Adler from the court on behalf of Jeffrey Lawson. These consolidated cases present a single legal issue, which is whether Hobbs Act robbery is a crime of violence under the career offender guideline in 4B1.2. The Third, Sixth, and Tenth Circuits have unanimously concluded that it is not, and the Ninth Circuit has unanimously reached the same conclusion with respect to an indistinguishable state robbery offense in Nevada. This Court should follow those well-reasoned opinions. The reason why they are correct is that the plain language of the Hobbs Act makes clear that robbery can be committed not only by threats of force or fear of injury to people, but to property. That is what takes it outside the Elements Clause, which is limited to force against people, and that is what takes it outside the scope of generic robbery, which requires an immediate danger to a person. The only definition left, and the one that the four circuits have focused on most, is the definition of extortion in the guidelines, but that is deliberately narrow and requires a threat or fear of physical injury. The ordinary meaning of physical injury requires injury to a person, not property. People are physically injured, property is damaged or destroyed. Black's Law Dictionary defines physical injury as bodily injury to a person. In addition, and most importantly, the Commission itself has consistently used the phrase physical injury throughout the guidelines to refer to people, not property. There are about six I can just rattle them off real quick. 2C1.1C3, 2J1.2B1B, 2J1.3B1, 5K2.12, 5K2.2, and 5K2.5. The first four of those guidelines differentiate in the disjunctive between physical injury or property damage. The latter two are both upward departure provisions. The former in 5K2.2 addresses physical injury and refers to a victim suffering. Property doesn't suffer. The latter, 5K2.5, refers to property damage or loss. The Commission understands that physical injury refers to people and not property. Here, Mr. Adler, you have two possibilities for trying to conclude that a Hobbs Act defense satisfies Section 4B1.2. You've got the so-called Elements Clause, right? And you've got the, which I think is what you've been talking about so far. No, Your Honor. I've been talking about the definition of extortion in the guidelines, which has its own specific narrow definition. No, I thought, well, I thought when you started you were talking about physical force against the person of another, which is the Elements Clause of 4B1.2, right? Yes, that is correct, of course. And then the second subsection, 4B1.2A2, is the so-called Enumerated Offenses Clause, for lack of a better term. And that one has the generic listing of robbery as an offense. That's correct. And as I've read the cases in other circuits, the paradigm is to try to figure out what the generic offense of robbery means, and then try to equate that generic offense against the offense in question here. Do you agree that that's the pattern that you have to follow analytically? Correct. We do agree with that. There is a third definition of extortion in the guidelines, and that's the one that the courts have had the most difficulty with, and that's why I went right to that. But Your Honor is correct that the first two options are the Elements Clause and generic robbery. As for those definitions, we think it's a relatively easy decision, and the Fourth Circuit's haven't struggled with them, because all you do is you look at the plain language of the HOPPS Act, which has person or property, and you just compare the face of that statute with the Elements Clause, which is limited to a person, and the face and the elements of generic robbery, which this court held in Lockley requires a danger to a person. And that's the analysis that the Fourth Circuit's have all relatively easily employed and reached the same conclusion, and we see no reason why a different conclusion... Counsel, what about the argument that Hobbs Act robbery is a federal codification of common law robbery? Can you respond to that? Yes, Your Honor. We think that may be true with respect to the degree of force that may be required, but the issue here goes to the recipient of the force. Is it a person or is it a property? The fact that it extends to property takes it outside of generic robbery. Common law robbery has really no relevance to the analysis here, except to the extent it bears on the elements of generic robbery. But this court has already spoken on that in Lockley and held that generic robbery requires immediate danger to a person, and the court, for that definition, looked to a Fifth Circuit case called Santiago Hernandez, which surveyed all of the jurisdictions, and explained that immediate danger to a person was the linchpin of all robbery offenses. And so, I think if you just compare the elements of Hobbs Act with the generic definition, it's overbroad. There's no match in the elements. And that's why it's, we think, such an easy call on that definition. There's a case from the Eighth Circuit that is not directly on point, but it has language dealing with Hobbs Act robbery under Section 3559 of Title 18. United States versus House, I think it is. Do you want to talk about that case? Sure. We responded to that in a 28-J letter. That decision has no reasoning, and even if the court thought it was persuasive for some reason, I don't think this court is able to follow it because of this court's own precedence. For example, in the Evans case from 2007, this court held that threatening to use a weapon of because it was threatened against property as opposed to people. So, we don't think that the House decision is persuasive, and it conducted no analysis and did not consider the or property issue. And that decision, I don't believe, I'm not sure if that was a Hobbs Act case or not, but we don't think the analysis is persuasive in that case. My notes reflect that it was, but I could be mistaken about that. I think the key case that the government really seems to be citing the most is a Fifth Circuit case called Tellez-Martinez. Dealing with California robbery. Correct. And that is the only decision that I think cuts in their favor, but we don't think that's persuasive because the government's argument seems to be, and what the court's argument in that case was, was that anytime you commit Hobbs Act robbery merely by threatening property, that that necessarily entails a threat of violence or fear of injury to a person. Well, there has to be somebody in the, it has to be in the presence of a person, correct? The taking or obtaining of the property has to be from a person or in the presence. In the presence. That's correct. They're arguing that because it's in the presence of the person, therefore that person, we would kind of impute fear and threat to that person. Correct. That appears to be the government's argument. There are two fundamental flaws with that argument. One is, as a matter of statutory construction, it would render the or property language of the Hobbs Act entirely superfluous. And this court in the Accardo decision refused to render and express means of commission of an offense superfluous. And the language in that statute in that case was similarly disjunctive. It had alternative means of causing harm to a person, property, or reputation. And this court said, we're not going to read out one of those means of commission. And in effect, that is what the government's argument would do here. But more fundamentally, there's a methodological problem, which it does not properly apply the categorical approach. We have to focus on the elements of the offense. And we know that person or property are alternative means of satisfying a single indivisible element of the statute. So whether there's inherent danger to a person or not, that's not an element of the Hobbs Act that the government will ever be required to approve or that the jury will ever be required to find because person is always linked disjunctively with or property. So it's not a proper application of the categorical approach, which we're all familiar with now. The only other thing I think that hasn't come up that I'd like to mention is the December 2018 proposal by the Sentencing Commission, which would add Hobbs Act robbery in as a crime of violence. And we think that proposal confirms our conclusion and the conclusion of the four circuits to address the issue because it would not be necessary to amend the guideline if Hobbs Act robbery was already concluded. And that's one way of looking at it. Another way to look at it is they've got three circuits that have overturned the application of, or basically said Hobbs Act robbery doesn't conform to the generic and they're trying to correct that problem. We agree they are trying to change the result of those cases, but they are not saying those cases are misinterpreting the current version of the guidelines or misinterpreting 4B1.2. They're trying to, they're substantively amending the guideline either parenthetically by including a reference to the Hobbs Act or in a definition that tracks the language of the Hobbs Act. So our view is that the commission is saying, well, the Justice Department has expressed concerns about these cases. We're not saying that they're wrong, but we think the result might be different and should be different as a policy matter. And the commission is soliciting views of all the relevant stakeholders and may consider empirical data. It's going to review all the decisions on that point. It's going to make us policy judgment. But the role of this court is not to make policy. As you know, it's of course to interpret the plain language of the guidelines that the commission promulgates and the four circuits to have done that have all reached the same conclusion. And that conclusion really follows from the direct language of the Hobbs Act and the direct language of the guidelines, whether the elements clause, the enumerated offense clause, or the definition of extortion in the guidelines. So if there are no further questions. All right. Thank you very much, Mr. Adler. Ms. Cannon. Good morning, Your Honors. And may it please the court, Eileen Cannon on behalf of the United States. Seated with me at council table is Daniel Cervantes, who represented the government in the district court in the Lawson case. For over 30 years, Hobbs Act robbery has been treated as a quintessential crime of violence in federal prosecutions across this circuit. And that's for good reason. And that's true in most cases. Obviously, the person who's committing, if you don't pay attention, if you disregard the categorical approach, you'd say 99.9% of the cases are threats and violence against persons, not property. And that's why it's been treated as a crime of violence for that period of time. But we're now in the categorical approach world, whether you like it or not, that seems to say that we have to look at whether or not it's possible to violate the Hobbs Act and be not covered within the parameters of the generic offense. And that's your problem. And that's what these other courts have held. And so that's what I want to see how you get around that. Is it just the presence of the person that you're arguing that, even though it's violence against property, there's a person present and therefore there's some sort of inherent threat to that person? Well, that's part of it, Your Honor. Our position is that, read in context, the definition of Hobbs Act robbery requires a taking from a person or in the presence of a person against that person's will. That against will language, I think, does substantial amounts of work. And it really speaks to, for example, the overcoming victim resistance component that the Supreme Court found so important in Stokeling. So we believe that there's no way to commit a Hobbs Act robbery without at least threatening force that is capable of causing physical pain or injury. And that's something this court has said in the Supreme Court. The fact that it's against the person's will, however, would normally apply to any kind of situation of a threat against property. I mean, you're not threatening against property because somebody wants you to do it. They don't like the idea. And isn't that all that is meant by being against the person's will? I think it's more than that. I think if you look at the Hobbs Act robbery when it was enacted, it mirrored, identically, New York robbery at the time. And if you go into that, you'll see that New York robbery, on the basis of that language, discusses the overcoming victim resistance component. And that's different, I would suggest, from extortion. That does not have that. Are you saying that because it's a risk of harm to the victim, that, therefore, the Hobbs Act robbery can be squeezed into the generic? I mean, I wouldn't use the term risk. I would say, using the Curtis Johnson terminology, it's at least a threat of force that is capable of causing physical pain or injury. And that's something this court has said in St. Hubert. But against whom in the property scenario? It's against the person and the property. And the property cannot be divorced from the person. But why against the person? It seems to me that you're equating lack of voluntary turnover with fear of physical harm. And those two are not necessarily the same. In other words, if you have someone who goes into a 7-11 and asks the cashier for money, and says to the cashier, give me your money. If you don't give me the money, then I know that's your car outside. I'm going to do some damage to your car when I leave. There's no physical threat of harm to the individual. Well, respectfully, I would suggest that person is still very much That's how Hobbs Act robberies have been committed and are always committed. Which is why I would point out the defendant's- Let me direct you to the language of the Hobbs Act robbery definition. It says that the force or violence of fear or injury can be to the property of a relative or a member of the victim's family. It doesn't say that that person has to be present. And then furthermore, in the next clause, it says, or of anyone in his company at the time of the taking or obtaining. So those seem to cover two different factual scenarios. One, it's a member of the person's family, or it can be somebody in the presence, written in the disjunctive. So to me, that says the person doesn't necessarily have to be present and therefore wouldn't have a fear of personal injury to the person. Our reading of that definition is that it does require a taking from a person or in the presence of a person. And as to the language about the relative, it's at the time of the taking or obtaining. So it is creating a scenario of physical proximity, which we think makes it impossible to commit a Hobbs Act robbery without at least threatening force in the Curtis Johnson sense. And that's actually what this court said in St. Hubert, albeit in a different context. So let's just change Judge Jordan's example a little bit. What if the person who wanted to rob the store said, if you don't give me the money, I'm going to go to your father's house and drive my car back and forth over his yard? We don't know that anybody's home at the house. It's a threat of injury to property where nobody's present. I would still submit that under those factual circumstances, the victim is still experiencing that threat of force that is at least capable of causing physical injury to a person. Property doesn't stand alone floating around in an inanimate way. It's tied to a person in this sense. And it doesn't experience injury on its own without that source of fear coming from a person. So any threat of harm to property is automatically, initially, a threat of harm to the person? If it's taken against the will of the individual in the presence of that person. But that's necessarily the case in every Hobbs Act scenario, right? So that means that in every Hobbs Act case where there is a threat to do harm to property, you necessarily have a threat of physical harm to the individual. Based on our reading of the text in context, without taking the or property words out in isolation, we think that's the case. But if your honors are uncomfortable with that textual reading, then we would suggest applying the generic robbery analysis, which under Lockley requires a taking of property from another person or from the immediate presence of another person by force or intimidation. We think Hobbs Act robbery substantially corresponds to that definition. And to the extent there's any... There's an interesting interjection on your part. Basically, what you're saying is the words or property are superfluous under this statute for purposes of this analysis. I mean, because it does no separate work. Two responses, your honor. The substantially corresponds terminology comes straight from the Supreme Court's decision in Taylor. In other words, the categorical approach in the generic sense does not require a perfect word for word match. That's sort of a threshold point. But I don't believe the or property words are doing no work in the statute. I think it's covering the type of robberies, for example, that we see in the Eason and Stiles cases here, where the defendants walked into jewelry stores with hammers, destroying display cases. They didn't go straight up to the victims or to the other customers in the store, but they nonetheless created a very strong fear of safety to those individuals who then had to scurry away in fear of their lives. So that or property language is doing the work of capturing those, I would call them maybe more indirect takings, but nonetheless qualifying under Hobbs Act robbery, which is, I think, why the defendants have been completely unable throughout this litigation to identify even one Hobbs Act robbery case throughout the country since the 1946 Act was passed that resembles this pure property application. It's a work of pure imagination because the or property is in there and we can pretty easily conceive of, and some of the hypotheticals have been mentioned today, about threatening a father's property or something of that sort, blowing up a building, putting explosives in a car, and saying, if you don't turn it over, I'm going to blow up this car, that kind of thing. One can even go further. You could talk about a person grabbing someone's dog and threatening that dog, which is property, and the person, the victim readily turns over money. There are all sorts of situations where property can be involved. Well, it's true, I'm sorry. Go ahead. It's true that one can imagine a lot of hypotheticals, but we're still grounded in reality. It's not just imagination. It's pretty real, even though most cases, obviously 99.9%, I'm sure, involve violence to the person. Well, two things. Number one, there's been not a single case provided. At this point, our view is that they have been unable to meet their realistic probability burden under cases like Dwayne Yazolver's. No, but I think what Judge Walker is trying to suggest, if I have it wrong, he can correct me, but I think what he's trying to suggest is that that realistic probability conception applies in a case where you have ambiguous statutory language or potentially ambiguous statutory language, and you're trying to figure out how far that language can extend to different factual scenarios. But here, the language of the Hobbs Act statute is not ambiguous at all because it allows a threat against property. The fact that the government has chosen not to prosecute it doesn't mean that it's not a realistic alternative. It probably hasn't done it because, as Judge Walker suggested early on, 99.9 of these cases are cases of violence or threatened violence against a person and are easily prosecuted that way. And if you have a threat against property, then those can sometimes be prosecuted as under the extortion statute. It doesn't mean that the statute is not susceptible of that reach. Well, I would submit that the statutory language is at least susceptible to different meanings as we see, for example, in the reasoning in the Fifth Circuit's Talas-Martinez case. So I don't think the language is so clear as to allow this court to discharge the defendants of their realistic probability burden. And this similar type of argument was raised in Vail-Bailon when there was some statutory language in this Florida statute at issue there that presumably would have been construed as clear. But nonetheless, the en banc court required more than simple imagination. And I would just reiterate that the defendants have been unable to come up with even a single case, which I think is quite telling about how Hobbs Act robbery occurs in reality and whether it's even plausible to imagine a scenario that wouldn't involve at least a threat of physical force against a person. If I could move now to the sort of generic robbery. Isn't there a reason, by the way, just before you do that, it seemed to me that the sentencing commission in coming up with 4B1.2 sub A, crime of violence, was focusing on physical force against the person of another and would not be necessarily focusing on anything other than that, such as robbery. And that's one of the reasons why they may have assumed that, well, maybe Hobbs Act does involve crimes against property. But if so, if it's just a threat against property, that's not the kind of person we want to have an enhanced sentence for. Well, my answer to that would be that Hobbs Act robbery is the preeminent federal offense that targets violent interference with interstate commerce. It's been treated as a crime of violence for over 30 years. And the fact that the commission didn't use that language, I think, is just because they really didn't think that Hobbs Act robbery ever would be on the chopping block. But now, of course, here we are. And I think at a minimum, there's the Hobbs Act robbery generic component plus the guidelines definition of extortion. That if this panel is very concerned about the or property language, it can very much pick up that by using the definition of extortion in the guidelines. My counterpart... So the definition of extortion also focus on physical injury. And physical injury, as a common sense matter, means injury to the person. Respectfully, physical injury doesn't say to a person. And if we want to go, for example, to Black's Law Dictionary, physical just relates to things relating to material, tangible, concrete things. And injury is just any harm that can be redressed in law. There's no reason why we must construe the term physical injury to be limited to people only. And if you do that, you're not only jeopardizing Hobbs Act robbery, but you're seriously calling into doubt the large majority of state extortion statutes that threaten property and always have. And I don't think the commission, when it made that amendment, and when it used the description of Nardello and the harm to reputation ever could have imagined that we would be striking down automatically all these state extortion statutes that for many, many years have targeted threats to property. Nobody's striking them down. This is a sentencing enhancement. Yes, but a ruling here in this case that extortion as defined in the guidelines covers only threats to people would cause serious damage to the many state... No, that's not the holding. The holding is that the Hobbs Act statute covers more than the guideline is meant to cover, and therefore it doesn't fit. But that would require a determination that guidelines extortion covers threats to people only. And our point is that guideline extortion as defined still covers threats to property. That's classic extortion. And nothing in that amendment written by the commission when it cites Nardello and threats to reputation should be read to exclude threats to property, which is really core extortion. And I think if the commission had wanted to take such a drastic step, it would have said so. It would have used the words to the person, for example. It didn't do so. And I don't think that reading is compelled in law, and it would create, in our view, some serious anomalies where not only Hobbs Act robbery would be disqualified, but you would largely be dissolving the difference between robbery and extortion. The only difference under their reading is that extortion will cover future threats of harm to people versus robbery covers threats to people in the present. That would be the only difference. That's not true because extortion has a consent element that's different from robbery, right? That's correct. But in reality, that would be... So instead of covering threats to property like extortion always has, it would be limited essentially to future injury cases. And robbery would be present injury cases. And that would be the sole distinction apart from what Your Honor has noted with the concern. A policy question, if I could. We don't get to do policy much here because it's not our gig. But you've got three circuits squarely addressing the question and going one way. You've got the Sentencing Commission proposing an amendment to the guideline. Why create a circuit split now? Well, I would say, number one, the lay of the law... Sorry, the landscape, so to speak, is not as lopsided as defendants suggest. The fifth and eighth circuits, I think, reasonably can be viewed as at least sympathetic to the government's view in this case. So it's not a 4-0, I would suggest. But even if you thought that were the case, I would say the commission in its amendment... I don't read that amendment as saying that they ever thought Hobbs Act robbery didn't qualify. I read that as... No, I'm not reading it one way or another. I'm reading it neutrally. I'm not saying the commission thought that these cases were right or these cases were wrong or anything. They're proposing an amendment. And if that amendment goes through, the law will be as you suggest it should be. And so my policy question, to the extent we're able to take that into account, is why create a circuit split in this sort of scenario? Well, I would say you're not creating a circuit split because you have the fifth and the eighth on your side. They don't address the express question. The Fifth Circuit, for example, addresses a California statute that very clearly says fear of person, fear to person or property. So it's materially indistinguishable in our view from the Hobbs Act robbery issue we're facing. So you're not alone if you make that choice. And I think it's really quite telling that over the course of this litigation, there's not been a single case matching their pure property hypothetical. And these cases, of course, don't help them because in all three of these cases, the defendants acted violently and certainly created a threat of physical force against the victims in the jewelry store or the innocent hotel clerk whose life was threatened. If the categorical approach didn't exist, everything you've said would make perfect sense. But we're living in an artificial world and the Supreme Court has put on the chopping block things that no one thought would be on the chopping block. That's true, Your Honor. But we still can prevail, we believe, under the categorical approach. And the Supreme Court recently has been quite hesitant to take decisions that render statutes largely inapplicable. We suggest that that... I have a question that's a little off the law here. I can certainly understand, and this goes back, and you can't rewind the clock, but the categorical approach seems to make much more sense when you're dealing with past crimes rather than the charge defense. Because the whole, as I understand it, the reason for the categorical approach is because of the due process concerns that are involved with regard to the individuals who are prosecuted, the earlier prosecutions where the person couldn't have anticipated maybe that it was ever gonna be used to enhance a sentence at that time. So that calculus wasn't part of that deliberation at that time. That doesn't seem to be true of the charge defense. The charge defense is known to the defendant. The possibility of a sentencing enhancement based upon past crimes, albeit applied in the categorical way, is known to the defendant. And so it always seems strange to me that the categorical approach is being applied to the charge defense, which is being litigated. I agree, Your Honor, and I think... But there's nothing we can do about that, I gather. I don't know that the Supreme Court has actually addressed it with regard to the charge defense and DesCamp and Mathis and these other cases don't seem to focus on that. Well, to my knowledge, there's no specific 11th Circuit case that mandates a categorical approach in the instant offense of conviction inquiry. I have not been able to find one. I think typically we view them as the same, but I think what you're saying makes a lot of sense. And the same concerns that were raised in Ovallez about the contemporaneous offense would be valid here. And the issue there in Ovallez, for example, had the by its nature language, which we don't have here. Yeah. And I don't know whether the Supreme Court has ever addressed, because we're bound by the 11th Circuit's prior decisions and the Supreme Court in connection. I don't know that they've ever addressed it in connection with the charge defense. And I believe there's some language in one of those early cases after Taylor that seems to indicate that the calculus is different when you're talking about the charge defense as opposed to past offenses. I would suggest that it is, but I know my time is over. Maybe just Sam Alito ruminating about things, because he's pretty upset about the categorical approach generally. Part of the problem is that the Ovallez rationale didn't hold up. That's correct. In a different scenario, a 924C scenario, which also involved the charge defense. But I think the real reason why it didn't is because it used the words by its nature in the statute, and we don't have that problem here. So to the extent in the future there can be an analysis of the instant offense of conviction and whether it really requires a categorical approach, I think is a very sensible course because we know the facts, and the facts here are clear. And not only we know the facts, the defendant knew the facts when he was, I mean, there's no due process. It's hard to think of a due process problem. That's correct, Your Honor. All three indictments here say threat to a person. There's no invocation of the or property terminology. And that's how our Hobbs Act robbery indictments are always loaded. It's not an argument that you made. That's correct. We're talking about. And if we were to venture that, I think we'd have to have briefing on it. That's correct, Your Honor. Well, thank you very much. We ask that you please affirm the three sentences below. Thank you. Thank you very much, Ms. Cannon. Mr. Adler. Thank you. Just to take Judge Walker's point last, the government not only did not make this argument in any of the three cases here, it expressly disavowed that. And footnote seven on page 18 of its brief. And by the way, there's no textual basis to differentiate between instant offenses and prior offenses. If you look at note two of the commentary to 4B1.2, they're treated exactly the same way and always have been throughout the guidelines. No, that's true. But that doesn't, the guidelines don't address categorical approach versus non-categorical approach. That's a separate concept, right? Your Honor, the text may be the same. But whether or not the categorical approach is used and when it's used and how it's used is not addressed by these statutes. I believe the commission is well aware that the categorical approach has been interpreted by the courts to apply to the guidelines and indeed in the December 2018- Well, it applies to the guidelines, generally speaking. I'm just talking about the charged offense versus past offenses. Your Honor, I just want to- The absence of the due process concerns, that led to the creation of the categorical approach. Well, I don't want to disagree with the court. I just wanted to point out that- You can, you're free to disagree. Well, we do. I don't think it's a due process- I don't believe it's a due process concern that that gave rise to that. I believe it was partially a statutory interpretation of the ACCA, especially with respect to the elements clause, which has as an element in the text. And the Supreme Court in Taylor has always used the categorical approach with respect to enumerated offenses, exactly the same length we have in the guidelines. And in the December 2018 proposal, the commission is currently considering whether to do away with the categorical approach for the guidelines. And we think that should be allowed to play out as a policy matter. Just on the extortion point real quick, the government has suggested that this would- ruling in our favor would get rid of all state extortion statutes. The commission doesn't seem concerned about that because in the December 2018 amendment, it does not propose any changes to the definition of extortion, even though it has clearly read the circuit opinions that have held that Hobbs Act robbery and Nevada robbery doesn't qualify there under. I would- as to the other definitions, the government has no response to the superfluous argument that we have raised or to this court's decision in Ocado. I cannot think of any way that their reading would not render the or property language entirely superfluous and unnecessary. As for the no case, not identifying a case, this court's law is very clear. There's four published decisions, Bortzacus, Vassal, Ocado, and Ramos, which say we don't have to do that, that the plain- where the language of the statute is plain. And I think Judge Jordan is correct. This court has required cases and rejected hypotheticals in prior cases where the statutory language was not plain and was ambiguous. And the government- government mentioned the Vail Bayon case. The majority- the en banc majority in that case found the word touching in the Florida felony battery statute to be ambiguous in light of the additional element requiring great- the causation of great bodily harm. And so there was an ambiguity about whether touching required- could be satisfied by a mere tap or whether it required something more. So that was the ambiguity in that case. The last point I want to make is that I think this court should not be baited into doing this inherent danger analysis because we think it's incompatible with the categorical approach. I think the government is trying to do a different version of the categorical approach. And I'd refer the court to the Solicitor General's merits brief that it filed two weeks ago in a case called Shular, which addresses the definition of serious drug offense in the ACCA. And that definition is very different from the ones we have here because it uses the word involving. And so what the Solicitor General is arguing in that case is that the state offense- for a state offense to involve certain conduct, you look at what it necessarily entails. And that is what the government is trying to do here. But in that same brief, the Solicitor General has expressly distinguished between that serious drug offense definition and the violent felony definitions in the Elements Clause and the Enumerated Offense Clause, the exact same definitions that we have in the guidelines. So I think the government is trying to change the analysis that we do under the categorical approach in this context. And lastly, I would just say, to Judge Jordan's point, there is no reason to disrupt the uniformity in the case law and start creating unwarranted sentencing disparities among similarly situated defendants across the country. That is something that I think the Sentencing Commission will address as a matter of policy moving forward. But there's no reason for this Court to start creating those disparities under the current version that remains in effect. If there are no further questions, we ask that the Court vacate the defendant's sentences and remand for resentencing without the career offender enhancement. Thank you. Thank you both very much. It was very helpful.